UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AERO INDUSTRIES, INC., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) 1:05-cv-0439-JDT-TAB ) |
| DEMONTE FABRICATING, LTD., and QUICK DRAW TARPAULIN SYSTEMS, INC., | ) ) ) ) ) |
| Defendants. | ) |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (Docket No. 17)**

Plaintiff Aero Industries, Inc. ("Aero") brings this patent infringement action against Defendants DeMonte Fabricating, LTD ("DeMonte") and Quick Draw Tarpaulin Systems, Inc. ("Quick Draw"). Now before the court is Quick Draw's Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 17). After carefully reviewing the parties' briefs and supporting materials, the court finds as follows:

**I.   BACKGROUND**

Aero is an Indiana company that manufactures and sells equipment and accessories for use with dump trucks, flatbed trucks, and tractor-trailer vehicles. One such accessory is the tarpaulin system. The tarpaulin system converts a conventional flatbed trailer into a fully covered, weatherproof, and water-tight hauling vehicle. As part of its tarpaulin system, Aero designed a superior flap system which provides a water-

tight seal without the necessity of manually folding the tarp underneath and connecting the tarp to the flatbed with ropes or ties. On December 8, 1987, the U.S. Patent Office issued U.S. Patent No. 4,711,484 to Aero which covered this tarpaulin flap innovation. (Compl. Ex. B.) In order to protect the components of its tarpaulin systems, Aero developed a unique bump rail system for which U.S. Patent No. 5,538,313 was issued on July 23, 1996. (*Id.* Ex. C.)

Quick Draw is a company located in Dearborn, Michigan, and organized under the laws of the State of Michigan. (DeMonte Aff. ¶ 4.) Like Aero, Quick Draw sells tarpaulin systems for flatbed trucks. Aero alleges that Quick Draw's systems include similar flap and bump rail designs which infringe upon Aero's patents.

Quick Draw alleges that it has never owned nor operated any business in Indiana, has never had any sales agents or dealers in Indiana, has never advertised its products directly in Indiana, has never owned real property in Indiana, and has never maintained a bank account in Indiana. (*Id.* ¶¶ 5-6, 9.) And while Mr. DeMonte, president of Quick Draw, claims that "Quick Draw has not made any sales to anyone in Indiana" (*Id.* ¶ 5), Aero presents evidence that suggests otherwise. Specifically, Quick Draw provided a sales quotation to an Indiana company (Reply Ex. 1), sold two tarpaulin systems to that company (*Id.* Exs. 2, 3), and provided that company with a warranty on the tarpaulin systems (*Id.* Ex. 1).

Quick Draw operates a website at www.quickdrawtarps.com. (*Id.* Ex. 4.) The website allows internet users to exchange commercial information with Quick Draw.

Specifically, the user can click on the "Quote Request" button on the website's main page. This action directs the user to a "Quick Draw Quote Request" page where the user can request a price quotation by entering the required information into the fields provided. (*Id.* Ex. 5.) The quotation request page requires the user to enter a contact name, company name, address, phone number, number of tarpaulin systems required, the "specs" of the user's trucks, the type of commodities hauled, and the desired options to include in the price quotation. The information is then electronically submitted to Quick Draw. In addition, the website includes a "Contact Information" page providing the user with Quick Draw's telephone number, fax number, and e-mail address. (*Id.* Ex. 4.)

On July 25, 2005, Quick Draw filed its motion to dismiss this action for lack of personal jurisdiction. Aero filed its response on August 12, 2005. On the same day, Aero also filed a motion for leave to conduct discovery related to Quick Draw's motion to dismiss for lack of personal jurisdiction. As part of its motion, Aero claims that it is aware of additional sales Quick Draw has made to another Indiana company. The court granted Aero's motion for leave to conduct discovery. On September 2, 2005, Quick Draw filed its reply in support of its motion to dismiss. Although Aero is currently conducting discovery related to the motion to dismiss, the court finds that Aero has already proffered sufficient evidence to allow the court to exercise personal jurisdiction over Quick Draw. Accordingly, the court finds no reason to delay its decision on Quick Draw's motion to dismiss.

## II.     STANDARD OF REVIEW

When the issue of personal jurisdiction is determined in the absence of an evidentiary hearing, the plaintiff must only make a prima facie showing that the defendant is subject to personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (citation omitted). The court accepts all factual conflicts in favor of the plaintiff. *Id.*; *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002).

## III.    DISCUSSION

A court exercising diversity jurisdiction has personal jurisdiction over a nonresident defendant only if the forum state courts would have jurisdiction. *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004); *Purdue Research Found.*, 338 F.3d at 779. Indiana law requires a two-step analysis to determine whether an Indiana state court may exercise personal jurisdiction over a nonresident defendant: 1) whether the defendant's conduct falls within Indiana's long-arm statute; and 2) whether the exercise of jurisdiction over the defendant comports with the requirements of federal due process. *Anthem Ins. Cos. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1232 (Ind. 2000); *Pozzo Truck Center, Inc. v. Crown Beds, Inc.*, 816 N.E.2d 966, 969 (Ind. App. 2004).

First, Quick Draw's conduct must fall within Indiana's long-arm statute, Trial Rule 4.4(A).[1]  Under Rule 4.4(A)(4), an organization submits to the jurisdiction of Indiana courts if such organization has "supplied or contracted to supply . . . goods or materials furnished or to be furnished in this state."  On at least two occasions, Quick Draw has sold a tarpaulin system to Diversified, an Indiana company.  The sales invoices establish that Quick Draw knew that Diversified was located in Noblesville, Indiana.  Likewise, as part of the sale, Quick Draw warrantied the tarpaulin systems.  By selling its tarpaulin systems to an Indiana company, Quick Draw has supplied goods in Indiana.

---

[1]  Indiana Trial Rule 4.4(A) provides, in relevant part:
(A) Acts Serving as a Basis for Jurisdiction.  Any person or organization that is a nonresident of this state . . . submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent:
    (1) doing any business in this state;
    (2) causing personal injury or property damage by an act or omission done within the state;
    (3) causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state;
    (4) having supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in this state;
    (5) owning, using, or possessing any real property or an interest in real property within this state;
    (6) contracting to insure or act as surety for or on behalf of any person, property or risk located within this state at the time the contract was made;
    (7) living in the marital relationship within the state notwithstanding subsequent departure from the state, as to all obligations for alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in the state; or
    (8) abusing, harassing, or disturbing the peace of, or violating a protective or restraining order for the protection of, any person within the state by an act or omission done in this state, or outside this state if the act or omission is part of a continuing course of conduct having an effect in this state.
In addition, a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States.

As such, Quick Draw has submitted itself to the jurisdiction of Indiana courts pursuant to Rule 4.4(A)(4).

But satisfying the long-arm statute, alone, is not sufficient to establish personal jurisdiction. The court must also determine whether the exercise of jurisdiction over Quick Draw comports with the requirements of federal due process. As in all patent infringement cases, the due process inquiry here is controlled by the law of the Federal Circuit. 28 U.S.C. § 1295(a); *3D Systems, Inc. v. Aarotech Lab., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998); *Miller Pipeline Corp. v. British Gas plc*, 901 F. Supp. 1416, 1421 (S.D. Ind. 1995).

Due process requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts, in turn, are established by "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). If those contacts are so continuous and systematic in nature that a defendant reasonably could foresee being haled into court for any matter, then general jurisdiction may be asserted over the defendant even when the controversy is not related to those contacts. *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 (1984). In the absence of continuous and systematic contacts, specific jurisdiction may be exercised over a defendant if the suit arises out of or is related to the defendant's contacts with the forum. *Id.* at 414 n.8. Aero argues that this court can exercise specific jurisdiction over

Quick Draw,[2] where "even a single act can support jurisdiction, so long as it creates a substantial connection with the forum." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998).

In determining whether specific jurisdiction should be asserted over a defendant, the court must consider whether the defendant purposely availed himself of the privilege of conducting activities within the forum state "such that he should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474-75 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The Federal Circuit applies a three-factor test for determining whether the exercise of specific personal jurisdiction comports with due process. This test asks whether 1) the defendant purposefully directed its activities at residents of the forum state; 2) the claim arises out of or relates to the defendant's activities with the forum state; and 3) assertion of personal jurisdiction is reasonable and fair. *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003) (citations omitted). The first two factors correspond to the "minimum contacts" prong of the *International Shoe* analysis, and the third factor with the "fair play and substantial justice" prong. *Id.* (citations omitted). The plaintiff bears the burden of establishing the first two elements.

---

[2] The court has granted Aero leave to conduct discovery of facts related to Quick Draw's sales and other business activities in Indiana. In doing so, the court has not extinguished the possibility that Aero may present evidence demonstrating Quick Draw contacts with Indiana sufficient to establish general jurisdiction. However, because the court finds that Aero has already presented sufficient evidence to establish specific jurisdiction, it need not delay its ruling on Quick Draw's motion to dismiss.

*Id.* Upon such a showing, the defendant must prove that the exercise of jurisdiction is unreasonable. *Id.*[3]

### A. Quick Draw Purposefully Directed Its Activities at Indiana

Aero asserts that Quick Draw purposefully directed its activities at Indiana when it 1) entered into a contract with and sold two tarpaulin systems to an Indiana company, and 2) maintained an interactive Internet web page.

In determining whether Quick Draw purposefully directed its activities at Indiana, the first and most important point of contact is its business with Diversified, an Indiana company. On May 12, 2004, Quick Draw faxed a price quotation to Diversified, listing the price of the tarpaulin system along with the requested options. (Resp. Ex. 1.) This quotation constituted an offer to sell the system to Diversified. It stated that the quotation was valid for thirty days and that "[a]cceptance of this quotation binds customer to the terms & conditions of Quick Draw." (*Id.*) It also indicated that Quick Draw would provide driver training. (*Id.*) The quotation recognized that Diversified was

---

[3] "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 475. This is a heavy burden: "In general, these cases are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation with the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994) (citing *Burger King*, 471 U.S. at 477). Quick Draw makes no effort to establish that the court's exercise of personal jurisdiction would be unreasonable or unfair. Quick Draw has failed to meet its burden under the third prong of the Due Process analysis. Thus there is no need to discuss this prong in the entry and reasonableness and fairness will be presumed upon Aero's satisfaction of the first two prongs.

located in Noblesville, Indiana. (*Id.*)  On July 16, 2004, Quick Draw sold a tarpaulin system to Diversified. (*Id.* Ex. 2.)  On October 1, 2004, Quick Draw sold a second tarpaulin system to Diversified. (*Id.* Ex. 3.)  From the quotation sheet, it appears that Quick Draw warrantied the systems sold to Diversified, including free inspections at six and twelve months.  Thus, Quick Draw entered a contract with an Indiana company, sold at least two tarpaulin systems to an Indiana company, and warrantied those systems.

Quick Draw correctly notes that an individual's contract with an out-of-state party *alone* cannot automatically establish sufficient minimum contacts in the other party's home forum.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985); *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1353 (Fed. Cir. 2003).  Instead, the court is to examine the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine "whether the defendant purposefully established minimum contacts with the forum." *Burger King*, 471 U.S. at 479; *Elecs. For Imaging*, 340 F.3d at 1353.  Here, Aero did more than merely enter into a contract with an Indiana company.  Specifically, it sold and installed two tarpaulin systems that it knew were to be used and located in Indiana, and it gave the Indiana company a warranty on those systems.  The court finds these facts similar to those addressed by the Federal Circuit Court of Appeals in *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir.1994).  In *Beverly Hills*, the Federal Circuit held that the court's exercise of personal jurisdiction over the defendant did not violate due process.  The defendant had shipped fans to six different Home Depot

stores within the forum state.  The stores sold the fans to residents of the forum state. The fans included warranties backed by the defendant.  The court held that the "defendant[] purposefully shipped the accused fan into Virginia through an established distribution channel.  The cause of action for patent infringement is alleged to arise out of these activities.  No more is usually required to establish specific jurisdiction." *Beverly Hills*, 21 F.3d at 1565.

The Supreme Court has also stated that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980).  By selling two tarpaulin systems to an Indiana company, Quick Draw has purposefully introduced its product to Indiana.  By backing those sales with warranties, Quick Draw has insured an ongoing relationship with the Indiana residents.  These activities, alone, would be enough to establish that Quick Draw purposefully directed its activities at Indiana.

In addition, Quick Draw maintains a website at www.quickdrawtarps.com.  Aero contends that Quick Draw has purposefully directed its activities at Indiana through its website.  The Supreme Court and Federal Circuit Court of Appeals have provided very little guidance regarding the concept of personal jurisdiction established through a party's Internet activities.  Because the Supreme Court and Federal Circuit are silent on this issue, the court will first look at how other courts have addressed personal jurisdiction and websites.

The majority of courts addressing this issue have endorsed the three-part sliding scale analysis to determine when the maintenance of a website creates the purposeful minimum contacts required by due process.  *See, e.g., Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 710 (8th Cir. 2003); *Gator.com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072, 1079 (9th Cir. 2003);  *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3rd Cir. 2003)*; ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 713 (4th Cir. 2002); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002); *Mink*, 190 F.3d at 336; *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1296 (10th Cir. 1999).  The three-part sliding scale originated in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).  The *Zippo* court reasoned that "the likelihood that personal jurisdiction can be exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet."  *Id.* at 1123-24.  At one end of the scale are "passive websites," in which defendants merely "make information available to those who are interested" and thus should not be subject to personal jurisdiction.  *Id.* (citing *Bensusan Rest. Corp. v. King*, 937 F. Supp. 295 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2nd Cir. 1997)).  At the other end are "transactional websites," in which defendants enter into contracts and conduct highly commercial business activities with residents of the forum over the Internet and thus should be subject to personal jurisdiction.  *Id.* at 1124 (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996)).  The more difficult determination lies in the middle where defendants have somewhat "interactive websites" in which a user can exchange information with the host computer but cannot enter into contracts.  Here, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial

nature of the exchange of information that occurs on the [website]." *Id.* (citing *Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328 (E.D. Mo. 1996)).

Applying the three-part sliding scale, the court finds that Quick Draw's website falls within this middle category. Quick Draw's website does not permit users to buy merchandise or enter into contracts over the Internet; thus, it does not fall within the category of a clear commercial business website. However, Quick Draw's site is more than merely passive because it allows Internet users to submit requests for price quotations over the Internet. In submitting a request for a price quotation through the website, a user must transmit specific commercial information, including a contact name, company name, address, phone number, number of tarpaulin systems required, the "specs" of the user's trucks, the type of commodities hauled, and the desired options to include in the price quotation. The information is then electronically submitted to Quick Draw. Once Quick Draw receives the request for the quotation and the accompanying commercial information submitted by the user, Quick Draw uses that information to provide the user with a quotation. This quotation also acts as a firm offer to sell the tarpaulin system that remains open for thirty days. This type of interactivity is entirely commercial in nature.

In short, Quick Draw's website features a sufficient level of interactivity involving the exchange of information that is highly commercial in nature. Quick Draw uses the information submitted by users to form price quotations and offers to sell its tarpaulin systems to such users. In addition, the website includes a "Contact Information" page which provides the user with Quick Draw's telephone number, fax number, and e-mail

address. Accordingly, the court finds that Aero has established that Quick Draw has purposefully directed the commercial activities on its website at residents outside its home state, including those in Indiana.

Aero has shown that Quick Draw purposefully directed its activities at Indiana when it 1) entered into a contract with and sold two tarpaulin systems to an Indiana company, and 2) maintained an Internet web page that allowed the user to submit commercial information in exchange for a price quotation and offer for sale from Quick Draw.

### B. Aero's Claim Arises Out of Quick Draw's Activities in Indiana

Next, Aero must show that the cause of action arises out of or directly relates to those activities directed at Indiana. Aero is suing for patent infringement. Patent infringement occurs when someone "without authority makes, uses, offers to sell or sells any patented invention." 35 U.S.C. § 271(a). Thus, patent infringement results from an offer to sell as well as the sale of a patented invention.

Quick Draw argues that Aero's claim does not arise out of Quick Draw's activities within Indiana because "a single offer to sell should be insufficient to meet the second prong of the due process inquiry." The court disagrees. First, § 271(a)'s language suggests that one act of infringement is sufficient to constitute patent infringement. It states that when the infringing party "offers to sell or sells . . . any patented invention," patent infringement has occurred. Furthermore, Quick Draw's activities within Indiana include more than a mere "a single offer." In addition to the offer, Quick Draw has sold

at least two tarpaulin systems to an Indiana company, has extended a warranty on those systems, and has maintained a website where Indiana residents can solicit price quotations and offers from Quick Draw.  Accordingly, Aero's claim of patent infringement arises from Quick Draw's activities directed at Indiana—offering to sell and selling two tarpaulin systems to an Indiana company.[4]

## IV.     CONCLUSION

For the foregoing reasons, the court asserts personal jurisdiction over Defendant. Accordingly, Defendant's Motion to Dismiss (Docket No. 17) is **DENIED**.

ALL OF WHICH IS ENTERED this 13th day of October 2005.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

---

[4] As explained above, Quick Draw's maintenance of its website satisfies the first prong of the Due Process analysis.  However, Aero has not submitted any evidence that its claim arises out of Quick Draw's maintenance of the website.  For example, the court has received no evidence that an Indiana company has utilized Quick Draw's website to solicit a price quotation or offer from Quick Draw.  Thus, the court notes that Aero has not satisfied prong two of the Due Process analysis as it relates to Quick Draw's website.

Michael D. Beck
Maginot Moore & Beck
mdbeck@maginot.com

J. Alan Galbraith
Williams & Connolly LLP
agalbraith@wc.com

John Michael Lowery
Lee Burns Cossell & Kuehn
jlowery@nleelaw.com

Christopher A. Smith
Hagemier Allen & Smith
csmith@dslindiana.net

Stephen Lewis Vaughan
Indiano Vaughan Roberts & Filomena
steve@iplawindiana.com

Magistrate Judge Tim A. Baker